J. S. Covington, Jr., Houston, Tex., for appellant.

Robert A. Hall, Houston, Tex., for appellee.

Before BROWN, MOORE* and GEWIN, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff-appellant, D. B. Clarke, brought this action against defendant-appellee, Continental Motors Corporation (Continental), to recover for the damages to his airplane sustained when the engine failed to function properly and he was caused to make an emergency landing. The trial court, sitting without a jury, found that no act or omission of Continental caused the accident. Unless the trial court was clearly erroneous in so finding, the judgment must be affirmed.

Clarke operated a charter air service. In November, 1958, when a 100-hour

**D. B. CLARKE, d/b/a Thunderbird Aviation Company, Appellant,**

v.

**CONTINENTAL MOTORS CORPORATION, Appellee.**

**No. 20462.**

United States Court of Appeals Fifth Circuit.

June 24, 1964.

* Of the Second Circuit, sitting by designation.

inspection was required, Clarke delivered the airplane to Aviation Specialties Company of Gallup, New Mexico (Aviation) for this purpose. Inspection revealed that it was necessary to rebuild the engine. In that process Aviation sent the engine's crankshaft to Continental, the original manufacturer, for modification. On its return, the crankshaft was inspected by Aviation and installed in the engine.

Some fifty flying hours after the plane was returned to service, while Clarke was flying from Houston to Albuquerque, he noticed a "shake", as if he had "hit a bird or something in flight." He did not pay much attention to it, but "within seconds or a minute" there was a "roughness", a severe "overall vibration." Quite understandably, he began to look for a suitable place to land. The cockpit instruments all registered normally, but smoke poured from the cowling and the vibration became increasingly violent. Clarke was able to make a "wheels down" landing on a highway, without injury to him or his passenger but the fuselage, wings and propeller were somewhat damaged. Inspection and subsequent dismantling disclosed that the engine was beyond repair. A gaping hole had been torn in the crankcase and a crankshaft counterweight was detached at one end and was well battered. A piston skirt was badly damaged and there may have been a loose connecting rod or piston. In the bottom of the crankcase were discovered the component parts which normally would have held the counterweight assembly to the crankshaft: a small pin, a retaining plate, broken in three pieces, and one-half of a broken snap ring.

Clarke builds his case on the evidence discovered when the engine was torn down. All agree that the counterweight could become detached at one end only if the pin came out and that the pin could come out only if the retaining plate was released by the snap ring. Since a snap ring does not normally break Clarke argues that this ring either was metallurgically defective or had been improperly installed by Continental. When it broke, goes Clarke's theory, the counterweight was allowed to pivot freely on one end as the crankshaft continued to turn repeatedly striking the crankcase wall which eventually ruptured. Continental meets Clarke's theory of causation on two fronts: it produced opinion evidence that the partially released counterweight did not break the crankcase as Clarke alleged; and that, in any event, the snap ring was neither structurally defective nor improperly installed. Although there is no question that the snap ring broke, Continental asserts that such was not the cause of the engine's malfunctioning.

On his case in chief, Clarke introduced the deposition of Worstell, an employee of Aviation, who was qualified as an expert and testified that he personally had installed the crankshaft; that the counterweights were in place when the crankshaft came back from Continental, and that "the counterweights and their retaining plates and circlips [snap rings] were intact and they were checked for the proper setting into the counterweight groove, and the crankshaft was found to be serviceable." Had the snap rings not been seated properly, he added, he would have caught it although he would not have noticed a structural defect in the ring. Worstell was of the opinion that the snap ring failure could be attributed to defective part manufacture and improper installation and agreed that such a failure could lead to a rupture of the crankcase. A metallurgist testified for Clarke that his examination of the snap ring fragment revealed that the metal was not defective, but that the break could have been caused by improper seating in the counterweight groove. He said the fragment he examined seemed to have been seated correctly, but the missing portion might not have been. Robert Royal, of the Federal Aviation Agency and one of the observers when the engine was dismantled, testified that markings on the counterweight and crank-

case indicated that the loose counterweight had caused the hole. Brandenburg, who also participated when the engine was torn down, testified that "there would be no way it [the snap ring] could get out if it was installed properly or if it wasn't defective * * * if properly installed, there is very little chance * * * of coming out of its own accord, unless it had some help." His inspection of the engine persuaded him, he said, that the primary cause of the accident was the dislodgement of the snap ring. However, he was "not able to determine exactly what had broken the ring."

For Continental, Clyde Fry, Supervisor of Continental's Crankshaft Division, testified to the methods used in modifying and testing crankshafts, and that he had never known a snap ring to break in flight. Nevertheless, he said that such a break would cause the counterweight to orbit out towards the crankcase. James Champion, another Continental employee, could not from the testimony he had heard in the case testify as to what caused the failure. The jolt and vibration experienced by Clarke, he said, indicated any number of malfunctions. A faulty connecting rod, he suggested, could damage the counterweight, break the snap ring and cause a rupture in the crankcase. Champion was of the opinion, furthermore, that the accident could not have occurred as Clarke's witnesses had described it, because a partially free counterweight would break the camshaft before striking the crankcase. This camshaft was not broken.

Before any of the intricate legal theories of liability would come into play, the court had to find that in the mechanical-physical sequence, the engine damage was due to the failure of the snap ring substantially as claimed by Clarke.

Each of the explanations had considerable support in the evidence. The court had to choose between them. The court chose the Continental theory. Among other things, the court thought it significant that the retaining plate was in three pieces. By informal, but nonetheless adequate, findings stated from the bench, the court found: "If the ring comes out, like it is claimed here that it came out, that little plate ought to come out and it shouldn't be found in three pieces, unless something else was happening in that engine. I find that the failure of this engine in flight was not started by snap ring coming out, that the primary cause of the engine failure that caused this plane to land was some * * * cause other than the failure of this snap ring."

The legal issues raised by the parties are quite subordinate to the more fundamental doctrine of burden of proof. No one will ever know what occurred within that particular engine revolving at 2500 r.p.m. at that particular moment. Consequently, the parties could do little more than urge that the opinions of their experts were more reliable than those of the other side. Although Clarke may have had every reason to believe that Continental, the manufacturer, was responsible for his misfortune, in the opinion of the trial court he had not met the burden placed upon him. The trial court, which had the opportunity to hear the witnesses explain their various opinions, was not clearly erroneous in concluding that Clarke had not demonstrated by a preponderance that the engine failure resulted from any asserted defect in, or defective installation of, the snap ring.

Judgment affirmed.